UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE HUTTON,<br><br>       Plaintiff,<br><br>   v.<br><br>CITY OF BERKELEY POLICE<br>DEPARTMENT, et al.,<br><br>       Defendants. | Case No.  13-cv-03407-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION  FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 43 |

## I.  INTRODUCTION

In this civil rights action, Plaintiff Joyce Hutton, who is African-American, alleges that she was pulled over by Defendant Jamie Lucero, an officer of the City of Berkeley Police Department, on the basis of her race and without reasonable suspicion.  Defendants bring a Motion for Summary Judgment ("Motion") seeking dismissal of all of Plaintiff's claims.  The Motion came on for hearing on September 5, 2014 at 2:00 p.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.     BACKGROUND

### A.     Facts[2]

This case arises out of a traffic stop of Plaintiff Joyce Hutton that occurred on July 10, 2012 at approximately 4:30 a.m.  Declaration of Officer Jamie Lucero in Support of Motion for Summary Judgment ("Lucero Decl."), ¶ 2 & Ex. 1 (Computer Aided Dispatch ("CAD") Report).  The parties agree that it was dark outside at the time the relevant events occurred.  Undisputed Fact No. 3.  That morning, Officer Hutton was on duty and driving east on Dwight Way, in Berkeley, California, in her marked patrol vehicle.  *Id*., ¶ 2.  Ms. Hutton also was driving east on Dwight Way and came up behind Officer Lucero.  Declaration of Counsel in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Panto Decl."), Ex. A (Hutton Dep.) at 57.  According to Officer Lucero, Ms. Hutton's vehicle approached her patrol car quickly from behind, coming so close that Officer Lucero could not see the headlights of Ms. Hutton's car.  Lucero Decl., ¶ 2.  She further stated that Ms. Hutton was following her "too closely at a speed that was unsafe." *Id*.  Ms. Hutton, on the other hand, testified that Officer Hutton was driving slowly and that she herself was driving very slowly as well.  Panto Decl., Ex. A (Hutton Dep.) at 63-64.  In any event, it is undisputed that soon after both cars turned left onto Telegraph Avenue (travelling north) Ms. Hutton moved into the right lane and passed Officer Lucero's patrol car.  Lucero Decl., ¶ 2; Panto Decl., Ex. A ((Hutton Dep.) at 64.   Officer Lucero states in her

---

[2] Pursuant to the Court's Standing Order, the parties were required to file a joint statement of material facts.  As stated in the Standing Order, "[s]eparate statements of undisputed facts shall not be filed and will not be considered by the Court."  Civil Standing Orders for Magistrate Judge Joseph C. Spero, Revised 2/12/2014, ¶ 17;  *see also* Docket No. 48 (ordering parties to file joint statement of undisputed facts).  Instead of filing a *joint* statement, the parties have filed a "Joint *Separate* Statement of Undisputed Material Facts" which apparently includes facts that are not, in fact, undisputed.  *See* Defendants' Objection to "Joint" Separate Statement of Undisputed Facts Filed by Plaintiff; Motion to Strike; Declaration of Lynne S. Bourgault in Support (Docket No. 56).  In particular, Plaintiff's counsel has inserted facts – purportedly undisputed – to which Defendants did not stipulate and inserted objections into some of Defendants' proposed undisputed facts.  Although the Court declines to rule on Defendants' objections and motion to strike, it will not treat as undisputed the facts inserted by Plaintiff's counsel without Defendants' consent, that is, Undisputed Fact Nos. 6, 7, 8, 15, 16, 18, 20, 22, 24, 26, 27, 28, 29 and 30.   Nor will Undisputed Fact Nos. 3 and 25 be treated as undisputed to the extent that Plaintiff has objected to those facts.  On the other hand, the Court will treat Undisputed Fact Nos. 1-5, 9-14, 17, 19, 21, 23 and 31 as undisputed.   The Court will also treat as undisputed any facts as to which it finds there is no conflicting evidence in the record.

United States District Court
Northern District of California

declaration that she "did not see the race or gender of the driver as it was still dark outside."

Lucero Decl., ¶ 2.

While both cars were still travelling north along Telegraph Avenue, with Officer Lucero now driving behind Ms. Hutton, Officer Lucero ran a record check of the license plate number on Ms. Hutton's vehicle on the Mobile Data Terminal ("MDT").  Joint Separate Statement of Undisputed Material Facts ("Undisputed Facts"), No. 1 (citing Lucero Decl., ¶ 3 & Ex. 1 at 9).

The response to the license plate check showed an active traffic warrant for "Sparks, Edward J."

*Id.*, No. 2 (citing Lucero Decl., ¶ 3 & Ex. 1 at 9).  When Officer Lucero learned of the warrant, she initiated a traffic stop by activating her red and blue lights.  *Id.*, No. 4 (citing Lucero Decl., ¶ 4).

She continued to follow Ms. Hutton, who turned right onto Durant and drove east towards Bowditch Street.  Lucero Decl., ¶¶ 4-5.  According to Officer Lucero, when Ms. Hutton failed to pull over, she switched on her siren.  *Id.*  She also radioed police dispatch that she was conducting a vehicle stop at approximately Durant and Bowditch Street.  *Id.*  However, Ms. Hutton continued driving, turning left onto Bowditch and then left onto Bancroft Way.  Lucero Decl., ¶ 6.  As Officer Lucero followed Ms. Hutton, she radioed dispatch again to change the location of the stop to Bancroft Way and Telegraph Avenue.  *Id.*  According to Officer Lucero, it is Berkeley Police Department practice for a cover unit to "automatically respond[] to the location of a vehicle stop unless the officer radios that no cover is needed."  *Id.*, ¶ 5.  She further states that she did not call off the cover officer "[d]ue to the driver's failure to yield, and the warrant attached to the vehicle."

*Id.*, ¶ 6.

Ms. Hutton pulled over in a white curb zone directly in front of the UC Berkeley Police Department, just east of Telegraph Avenue.  *Id.*, ¶8; Undisputed Fact No. 11.  It is undisputed that Ms. Hutton drove approximately two and a half blocks after Officer Lucero turned on her overhead patrol lights before stopping.  Undisputed Fact No. 5.  Although there is no indication that Ms. Hutton was driving at high speed – and Ms. Hutton testified that she was *not* driving at high speed – Officer Lucero stated in her declaration that the driver's behavior appeared to her to be "evasive" because the driver drove at least two and a half blocks and made two or three turns after Officer Lucero had activated her lights before finally pulling over.  Lucero Decl., ¶ 6; Panto

3

1    Decl., Ex. A (Hutton Dep.) at 68-69.  Officer Lucero conceded in her deposition she did not know

2    how fast Ms. Hutton was driving after she passed Officer Lucero and that "speed . . .was not part

3    of [her] investigation."  Panto Decl., Ex. C (Lucero Dep.) at 151.   In the meantime, Ms. Hutton

4    testified that she was initially uncertain whether Officer Lucero was pulling her over and that once

5    she understood that she was being stopped, she was intimidated and wanted to be sure the stop

6    occurred somewhere that was well-lighted.  Panto Decl., Ex. A (Hutton Dep.) at 68-69.

7        Officer Lucero testified at her deposition that there were "two factors" in her stop of Ms.

8    Hutton:  one was the "initial violation" of following too closely and the second was the warrant on

9    the vehicle.  Panto Decl., Ex. C (Lucero Dep.) at 144, 171.  Officer Lucero states in her

10   declaration that after she pulled Ms. Hutton over, "the driver of the vehicle, a female, exited the

11   vehicle and ran toward [her] yelling."  Lucero Decl., ¶ 8.  According to Officer Lucero, she

12   ordered Ms. Hutton to get back in her car and Ms. Hutton complied.  *Id*.  Ms. Hutton, on the other

13   hand, testified that she remained in the car after she was stopped and did not get out of the car

14   until she was asked to.  Panto Decl., Ex. A (Hutton Dep.) at 106, 108.

15       It is undisputed that Officer Lucero approached the car, identified herself, and asked

16   Plaintiff for her driver's license, insurance and proof of registration.  Lucero Decl., ¶ 9.  Plaintiff

17   provided her insurance information and identified herself orally but was unable to find her driver's

18   license.  Panto Decl., Ex. A (Hutton Dep.) at 106; Lucero Decl., ¶ 9.  Officer Lucero then returned

19   to her patrol car and, using the information Ms. Hutton provided, used her MDT to check the

20   status of Ms. Hutton's license.  Lucero Decl., ¶ 9.  Officer Lucero also asked dispatch to run a

21   license status check.  *Id*.  According to Officer Lucero, "[t]he Department of Motor Vehicles

22   return on both [her] MDT and from dispatch was that Ms. Hutton's driver's license was

23   suspended."  *Id*.  The CAD Report reflects that Ms. Hutton's license was suspended "except in

24   course of employment 10673 VC."[3]  Lucero Decl., Ex. 1 (CAD Report) at 11; Undisputed Fact

25   _____

26   [3] Cal. Vehicle Code § 10673 provides, in relevant part:
             (a) The privilege of a person employed for the purpose of driving a
27           motor vehicle for compensation whose occupation requires the
             use of a motor vehicle in the course of his or her employment to drive a
28           motor vehicle not registered in his or her name and in the course of
             that person's employment may not be suspended under this chapter

                                                      4

United States District Court
Northern District of California

No. 13.[4]   The list of "Department Actions" relating to Ms. Hutton's license status indicate that her

license was suspended in 2009 and reinstated in July 2010, then suspended again in August 2010.

*Id.*  The last office action showed that Ms. Hutton's license was suspended effective January 26,

2011 due to "failure to appear."  *Id.*  Officer Lucero further stated that the "DMV return also

indicated that notice of the license suspension had been provided to Ms. Hutton by the DMV."

Lucero Decl., ¶ 9 & Ex. 1 at 11.  The CAD report carries notations indicating that notice of the

January 26, 2011 suspension was "mailed not returned" to Ms. Hutton.  Lucero Decl., Ex. 1 at 11;

Undisputed Fact No. 14.

        Officer Lucero then returned to Ms. Hutton's vehicle, informed her that her license was

suspended, and asked her to get out of the car.  Lucero Decl., ¶ 11; Panto Decl., Ex. A (Hutton

Dep.) at 111.   Ms. Hutton testified that she was "taken aback" when Officer Lucero told her that

her license was suspended.  Declaration of Lynne S. Bourgault in Support of Defendants' Motion

for Summary Judgment ("Bourgault Decl."), Ex. A (Hutton Dep.) at 95.  According to Ms.

Hutton, she believed her driver's license was valid because she had paid off some outstanding

tickets  in May 2012.  *Id*. at 98.   Ms. Hutton further testified that when she later went to the DMV

to determine the status of her license there was "conflicting paperwork" and therefore she was not

sure whether her license was suspended on the date of the incident in this case.  *Id*. at 95, 105; *see*

*also* Panto Decl., ¶ 11 and Ex. J (a "DMV document . . . showing information for Plaintiff's

driver's license" dated 3/7/14).

        According to Officer Lucero, she informed Ms. Hutton that she was ordering a tow of her

vehicle.  Lucero Decl., ¶ 11.  She states that "Berkeley Police Department policy and practice is to

impound vehicles driven by persons with a suspended license."  *Id*.  Other officers who were at the

scene testified that the decision to tow the vehicle was made by Officer Lucero and that they were

---

        even though his or her privilege to drive is otherwise suspended
        under this chapter.

[4] Plaintiff does not assert that she was driving in the course of her employment that morning; nor
is there any evidence that she was driving a car that was registered to her employer.  To the
contrary, the only evidence in the record is that the vehicle was registered to Plaintiff.  Therefore,
the Court holds, as a matter of law, that Ms. Hutton was not driving in the "course of
employment" at the time she was stopped.

United States District Court
Northern District of California

1    not consulted.  Panto Decl., Ex. D (Huynh Dep.) at 47; *id*., Ex. E (Michalczyk Dep.) at 48; *id*., Ex.

2    F (McIntosh Dep.) at 39; *id*., Ex. G (Neff Dep.) at 29.  Officer Lucero further states that "[n]o one

3    at the scene, including Ms. Hutton, told me they were able to drive the car for Ms. Hutton."

4    Lucero Decl., ¶ 11.  Similarly, Ms. Hutton testified that she "didn't have any problem with them

5    taking the car" and there was "no argument" on this subject, both because she was unsure whether

6    her license was suspended and because she had learned recently that a problem with the struts

7    made the car dangerous to drive.  *Id*. at 105, 108-110.

8           The Berkeley Police Department General Order for vehicle impoundment provides that

9    "[i]t shall be the policy of the Berkeley Police Department to tow vehicles when necessary for

10   lawful investigative purposes or when authorized by law."  Lucero Decl., Ex. 2 (Berkeley Police

11   Department General Order V-2 ("the General Order")), Section 2.  That policy further provides as

12   follows:

13                  Determination of tow authority for vehicle seizures based on a
                    driver's license status offense (i.e., no license, expired, suspended,
14                  driving outside of restriction) shall be based on the particular
                    circumstances of the violation.

15   *Id*. Section 8.  Officer Lucero testified at her deposition that her understanding of the policy was

16   based on what was taught in training; she was not able to cite to the General Order specifically.

17   Panto Decl., Ex. C (Lucero Dep.) at 259.  She testified that her understanding was "that unless

18   extreme circumstances exist or something else of urgent nature comes about, our practice is to tow

19   the vehicle for a suspended license."  *Id*.

20          Officer Lucero also testified that at some point in the stop – it is not clear when – Ms.

21   Hutton was "yelling" at Officer Lucero and accusing her of stopping Ms. Hutton because of a

22   bumper sticker on Ms. Hutton's car referring to Oscar Grant.  Panto Decl., Ex. C (Lucero Dep.) at

23   141.  According to Officer Lucero, "it was a yelling episode about police killing people and the

24   Oscar Grant bumper sticker."  *Id*. at 141.  Officer Lucero testified that she recalled seeing the

25   bumper sticker.  *Id*. at 142.  In her declaration, however, she states that she did not notice the

26   Oscar Grant bumper sticker until Ms. Hutton pointed it out to her.  Lucero Decl., ¶ 16.

27          Once Ms. Hutton got out of her car, she became aware that more officers had arrived at the

28   scene.  Panto Decl., Ex. A (Hutton Dep.) at 152.  These included Officers Greg Michalczyk, Elgin

McIntosh, Kevin Neff and Van Huynh.  Panto Decl., Exs. D-G; Lucero Decl., ¶ 13. Officer Huynh was one of Officer Lucero's supervisors and, as the most senior officer at the scene, was the scene supervisor.  Panto Decl., Ex. C (Lucero Dep.) at 18; *id.*, Ex. D (Huynh Dep.) at 17.  Officer Lucero also recalls that a UC Berkeley police officer was standing by to assist.  Lucero Decl., ¶ 13.  Ms. Hutton testified that she counted nine patrol cars.  Panto Decl., Ex. A (Hutton Dep.) at 131.  While at the scene, she wrote down the names of four City of Berkeley police officers and the numbers of three patrol cars.  Undisputed Fact No. 31.  She testified that she was not able to write down the names of all of the officers at the scene, however, because all the officers started to leave.  Bourgault Decl., Ex. A (Hutton Dep.) at 132.  Ms. Hutton testified that Officer Lucero was the only female officer at the scene.  Panto Decl., Ex. A (Hutton Dep.) at 117.

Officer Michalczyk was one of the officers who arrived on the scene in response to Officer Lucero's radio transmission stating that she would be conducting a traffic stop.  Declaration of Officer Greg Michalczyk in Support of Motion for Summary Judgment ("Michalcyk Decl."), ¶ 2. According to Officer Michalczyk, when he arrived he saw several UC Berkeley patrol cars parked in the vicinity of the stop.  *Id.*, ¶ 4.  He further states that at some point he "saw other individuals across Bancroft Way and [ ] heard Ms. Hutton yelling to them."  *Id.*, ¶ 5. Officer Michalczyk states that these individuals began to approach and that he told them to stay where they were.  *Id.* He states that the individuals complied, but that he nonetheless requested additional cover officers because the individuals appeared to be associated with Ms. Hutton and they were behind him.  *Id.*, ¶ 6.

At some point, Ms. Hutton's father approached the scene and was told by a Caucasian male officer that he could not approach his daughter.  Panto Decl., Ex. B (Jay Hutton Dep.) at 48. Mr. Hutton testified that he had arranged to meet his daughter that morning to pay her for delivering papers for him the previous week.  *Id.* at 18.  He also testified that after the "police thinned out [and] the tow truck came" he approached the officers and asked them not to tow the car.  *Id.* at 32.  In particular, he testified as follows:

> And I walked over to where the police were and she was still there and everything.  And I asked him, I said, "You're not going to tow her car, are you?"  And the lady said, "Yes I am."  And I said, "But

United States District Court
Northern District of California

1   why?" I said, "Why are you going to tow her car?" And she said,
    "We told her to shut up. And she wouldn't shut up." I said, "Yeah,
2   but if she did something wrong, if she was driving wrong, why don't
    you just give her a ticket? Why tow the car?" She said, "We told her
3   to shut up." I said, "Yeah, but if she did something bad enough, put
    her in jail but don't tow her car. This is a single parent. She got five
4   kids. She got to take her kids to school. She got to get to the Wash
    Out. She got to shop for groceries. She only got one car. And they
5   going to have to stand in the rain to get where they want to go. And
    she said, "Well next time she'll know to shut up."

6   *Id*. at 33. Mr. Hutton testified that the female officer he spoke to was Caucasian and

7   approximately 5'2" tall. *Id*. at 49. He was not sure if there were any other female officers at the

8   scene. Bergault Decl., Ex. B (Jay Hutton Dep.) at 59.

9       Before Ms. Hutton's car was towed, an inventory was conducted by the officers.

10  Michalczyk Decl., ¶ 8. Ms. Hutton testified that she was "very cooperative and [ ] let them search

11  the car." Panto Decl., Ex. A (Hutton Dep.) at 120. According to Officer Michalczyk, the trunk

12  was not inventoried, however. *Id*., ¶ 8. Officer Michalczyk testified that he believed at the time

13  that he was not allowed to inventory the trunk because it was locked and secure, but subsequently

14  he was instructed that the trunk also should be inventoried when a car is towed. Decl., Ex. E

15  (Michalczyk Dep.) at 41-42.[5]

16      Ms. Hutton testified that her belief that the traffic stop was racially motivated was based on

17  Officer Lucero's actions. Panto Decl., Ex. A (Hutton Dep.) at 117-118. In particular, Ms. Hutton

18  pointed to the fact that Officer Lucero followed her for several blocks before stopping her. *Id*. at

19  118. She also testified that Officer Lucero had a "threatening look" on her face and spoke in a

20  tone that indicated that her actions were racially motivated. *Id*. at 118-119.

21      Officer Lucero issued a citation to Ms. Hutton for violation of California Vehicle Code §

22  14601(a) (driving on a license that has been suspended for certain violations) and California

23  Vehicle Code § 21703 (following too close). Lucero Decl., ¶ 15. Plaintiff appeared at the court

24

25  [5] Plaintiff originally asserted a claim for excessive forced based on the allegation that Officer
    Lucero subsequently slammed Ms. Hutton's arm in the trunk when Ms. Hutton was retrieving
26  items from the trunk and that Officer Huynh refused to call 911 when Ms. Hutton asked him to do,
    stating that Ms. Hutton was not injured. Complaint, ¶¶ 20-22. Plaintiff has omitted these
27  allegations from her First Amended Complaint, however, and no longer bases her claims on the
    alleged slamming of her arm in the trunk or Defendants' failure to call 911 when she requested
28  that they do so.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1   hearing but Officer Lucero did not.  Bourgault Decl., Ex. A (Hutton Dep.) at 104.  The court

2   upheld the citation for driving on a suspended license but dismissed the violation for driving too

3   close because Officer Lucero did not appear.  *Id.*, Ex. N (minute order).  Ms. Hutton testified that

4   she "pled no contest" to the citation for driving on a suspended license.  Panto Decl., Ex. A

5   (Hutton Dep.) at 103.

6       **B.    The Complaint**

7       In her First Amended Complaint ("FAC"), Plaintiff asserts eight claims.  First, she asserts

8   a claim under 42 U.S.C. § 1981 for alleged violation of the Fourteenth Amendment of the United

9   States Constitution (Claim One).  In support of Claim One, Plaintiff alleges that she was denied

10  the right to call her father to the scene and to record the names of the responding police officers,

11  and was treated more harshly than she otherwise would have been, due to her race as an African-

12  American and "her affiliation with a movement surrounding the death of Oscar Grant, an African-

13  American who was killed by Bay Area Transit Police . . . ."  FAC at 8.

14      Second, Plaintiff asserts a claim under 42 U.S.C. § 1983 for alleged violation of the Fourth

15  Amendment of the United States Constitution (Claim Two).  In support of Claim Two, Plaintiff

16  alleges that her Fourth Amendment right to be free from unreasonable search and seizure was

17  violated by "a traffic stop without antecedent justification, a detention and a seizure of Plaintiff's

18  vehicle."

19      Third, Plaintiff asserts a claim under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of*

20  *City of New York,* 436 U.S. 658 (1978) (Claim Three) based on the allegation that the City of

21  Berkeley Police Department "approved, ratified, condoned, encouraged, sought to cover up, and/or

22  tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations

23  by officers."  *Id.* at 9.

24      Fourth, Plaintiff asserts a claim under 42 U.S.C. § 1983 based on alleged violation of

25  Plaintiff's right to due process and equal protection of the laws under the Fifth and Fourteenth

26  Amendments to the United States Constitution (Claim Four).  *Id.* at 10. In particular, she alleges

27  that Defendants "did not have a right or reason to *Terry* stop Plaintiff, to search Plaintiff, to seize

28  or detain Plaintiff, or to seize Plaintiff's car, nor to prevent her from calling her father to her

9

1   presence during the encounter with Defendant, nor to prevent her from recording officers' names

2   and badge numbers amongst other things." *Id*.  Plaintiff also asserts that her First Amendment

3   right to "observe and record police activities in public was infringed." *Id*.

4          Fifth, Plaintiff asserts a claim under the Bane Act, Cal. Civ. Code § 52.1 (Claim Five) on

5   the basis that Defendants allegedly interfered "by threats, intimidation and coercion with

6   Plaintiff's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the

7   United States and the State of California." *Id*. at 11.

8          Sixth, Plaintiff asserts a claim under the Ralph Act, Cal. Civ. Code § 51.7  (Claim Six)

9   based on Defendants' alleged violation of Plaintiff's right "to be free from violence, or

10  intimidation by threat of violence committed against her and her property because of her race,

11  political affiliation, or other impermissible bias." *Id*.

12         Seventh, Plaintiff asserts a negligence claim (Claim Seven).  *Id*. at 12-14.  In her

13  negligence claim, Plaintiff asserts that a plaintiff may assert a claim for negligent infliction of

14  emotional distress based on discrimination. *Id*. at 13.  She also asserts that negligence per se may

15  be established based on violation of a duty of care set forth in a statute;  in this case, it is alleged,

16  Defendants' violation of the Ralph Act and the Bane Act supports Plaintiff's claim of negligence

17  per se. *Id*.

18         Finally, Plaintiff asserts a claim for negligent training, supervision and retention against

19  the "entity defendants" (Claim Eight) based on the allegation that the City of Berkeley Police

20  Department negligently trained and retained its employees, including Officer Lucero.   *Id*. at 14-

21  15.

22     **C.     The Motion**

23         In their Motion, Defendants assert they are entitled to summary judgment as to all of

24  Plaintiff's claims.   They seek dismissal of Plaintiff's claims on the following grounds:

25         Claims based on alleged Fourth Amendment violations:  Defendants assert the undisputed

26  facts establish that Plaintiff's Fourth Amendment rights were not violated because: 1) Officer

27  Lucero had reasonable suspicion to stop Ms. Hutton based on the fact that the records check she

28  ran on the license plate showed there was an outstanding warrant on the vehicle; 2) by the time

United States District Court
Northern District of California

10

1    Ms. Hutton stopped her vehicle, Officer Lucero had probable cause to believe Ms. Hutton was

2    evading a police officer in violation of Cal. Vehicle Code § 2800.1(a);  3) Officer Lucero had

3    probable cause to issue a citation because she had information indicating that Ms. Hutton's

4    driver's license was suspended and that Ms. Hutton had received notice of the suspension;  4)

5    Officer Lucero was entitled to impound the vehicle under Cal. Vehicle Code § 14602.6(a)(1)

6    because Ms. Hutton was driving with a suspended license; and 5) an inventory conducted in

7    conjunction with impoundment is permissible under the Fourth Amendment and, in any event, Ms.

8    Hutton consented to a search of her vehicle.  Motion at 9-14.[6]

9        Qualified immunity:  Defendants assert Officer Lucero is entitled to qualified immunity to

10   the extent Plaintiff's claims are based on the citation for driving on a suspended license because

11   she reasonably believed Ms. Hutton was driving on a suspended license based on the information

12   available to her at the time of the stop.    Id. at 14-15.  Further, Defendants assert, Officer Lucero

13   reasonably believed she was entitled to impound Plaintiff's vehicle under Cal. Vehicle Code §

14   14602.6, "even if Plaintiff is able to show Officer Lucero denied Plaintiff the opportunity to have

15   someone else drive her vehicle to a legal parking spot." Id. at 14-15.

16       Racial discrimination claims:  Defendants argue that Plaintiff's claims under 42 U.S.C. §

17   1981 and Cal. Civil Code § 51.7 fail because Plaintiff cannot demonstrate that Defendants'

18   conduct was motivated by race.  Id. at 15-16.  In particular, Defendants assert that when the only

19   evidence that an officer's conduct was motivated by discriminatory animus is the plaintiff's

20   subjective beliefs, the officer is entitled to summary judgment.  Id.

21       Bane Act claim:  Defendants assert Plaintiff's claim under Cal. Civ. Code § 52.1 fails

22   because a wrongful detention, by itself, is insufficient to state a Bane Act claim; rather, a plaintiff

23   must show that the defendant engaged in coercion that is "independent from the coercion inherent

24   in a wrongful detention itself."  Id. at 17 (quoting Gant v. County of Los Angeles, 765 F. Supp. 2d

25   1238, 1253-54 (2011)).   Further, Defendants assert, the statute covers only "egregious

27   [6] Although Defendants contend Officer Lucero also had probable cause to stop Ms. Hutton
     because she was following too closely, they acknowledge that there are material disputes of fact as
28   to whether Plaintiff was tailgating and therefore, Defendants do not seek summary judgment on
     that basis.  See Motion at 2 n. 2.

United States District Court
Northern District of California

interferences with constitutional rights" and must be "deliberate or spiteful." *Id*. (citing *Shoyoye v. County of Los Angeles*, 203 Cal. App. 947, 960 (2012)).  Here, Defendants argue, there is no evidence that Officer Lucero interfered with any of Ms. Hutton's constitutional rights or that Officer Lucero acted in a manner that was deliberate or spiteful.  *Id*.  Instead, Defendants argue, "this case arises out of a lawful stop, citation and tow."  *Id*.  Further, even if there were a fact question as to whether the stop was lawful, Defendants assert, this would not be sufficient to state a Bane Act claim under *Grant* and *Shoyoye*.  *Id*.  Defendants also argue that the claim fails to the extent it is based on false arrest/false imprisonment because Cal. Penal Code Section 847(b) provides that officers may not be held liable for arrests conducted within the scope of their authority where they had reasonable cause to believe the arrest was lawful.  *Id*.  In addition, Defendants argue, the claim fails to the City of Berkeley because the City has tort immunity under Cal. Gov't. Code § 815.2(b).  *Id*.

   <u>*Monell* claim and state law negligent training claims</u>:  Defendants argue that a claim under *Monell* based on inadequate training and retention requires proof that officers have violated constitutional rights so often that the need for further training must be "plainly obvious" to the city policymakers, who are deliberately indifferent to the need.  *Id*. at 18 (citing *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997)).  There is no such evidence in this case, Defendants assert.  *Id*.  Defendants further contend the claim fails because there is no evidence of a "direct causal link between any allegation of deliberate indifference, and the alleged constitutional violations here."  *Id*. at 19.  Finally, Defendants assert there is "no evidence of negligent training or supervision."  *Id*.

   <u>Failure to allow monitoring</u>:  Defendants reject Plaintiff's assertion that her First Amendment rights were violated because Defendants did not allow her to monitor police activity. *Id*.  To the extent Plaintiff's claim is based on the alleged interference with Plaintiff's efforts to record the identifying information of the officers at the scene, Defendants contend there is no evidence of interference as Plaintiff was able to write down the names of several of the officers, record the numbers of some of the patrol vehicles and speak with the officers at the scene.  *Id*. Defendants also reject the claim that Plaintiff's father should have been permitted to approach,

United States District Court
Northern District of California

1   arguing that it is well-established that police officers have wide discretion to issue orders for

2   officers' safety during detentions.  *Id*.  According to Defendants, the verbal instructions to Mr.

3   Hutton requiring that he stand about a third of a block from Ms. Hutton's vehicle was well within

4   that discretion.  *Id*.

5       Negligence claims:  Defendants contend Plaintiff's negligence claim fails, as a matter of

6   law, because an officer's actions relating to a stop, search, citation or tow are governed by the

7   Fourth Amendment and not negligence standards.  *Id*.  Nor is there any authority that permits a

8   plaintiff to assert a claim for negligent infliction of emotional distress under circumstances like the

9   ones in this case, Defendants assert.  *Id*.

10      Fifth and Fourteenth Amendment Due Process claims:  Defendants argue that they are

11  entitled to summary judgment on Plaintiff's due process claims under the fifth and Fourteenth

12  Amendment because the alleged wrongful conduct is covered by the Fourth Amendment.  *Id*. at 20

13  (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

14      **D.    Opposition**

15      Plaintiff asserts that there are factual disputes as to key material facts in this case that

16  preclude summary judgment.  Opposition at 5-6.  Plaintiff points to the conflicting accounts of

17  Ms. Hutton and Officer Lucero as to whether Plaintiff was tailgating and also notes that there is

18  evidence that Plaintiff's license was "restricted with driving privileges limited to work." *Id*. at 5.

19  She also asserts that a warrant for a male suspect cannot justify the stop.  *Id*.

20      Next, Plaintiff contends she has valid claims under *Monell* and for negligent supervision

21  under state law.  *Id*. at 6-7.  In support of this claim, Plaintiff points to a Berkeley Police

22  Department policy document suggesting that vehicle stops require probable cause.  *Id*. at 6 (citing

23  Panto Decl., Ex. I).  According to Plaintiff, this policy is consistent with United States Supreme

24  Court authority holding that probable cause is required to conduct a traffic stop.  *Id*. at 7 (citing

25  *Whren v. U.S.*, 517 U.S. 806, 809-810 (1996)).  Despite this policy, however, Berkeley Police

26  officers testified that they do not need probable cause to conduct a traffic stop, Plaintiff asserts,

27  indicating that they have not been adequately trained as to their own department's policies.  *Id*. at

28  6-7.  Another example of Defendants' inadequate training, Plaintiff asserts, is the officers' lack of

13

1   familiarity with the Berkeley Police Department's General Order setting forth guidelines as to

2   when vehicles should be towed.  *Id.* at 7.[7]

3        Plaintiff also asserts her Fourth Amendment claims should survive summary judgment

4   because there is evidence that Plaintiff was driving reasonably and lawfully when she was stopped

5   by Officer Lucero.  *Id.* at 8.  Plaintiff criticizes Defendants' reliance on "self-serving declarations"

6   rather than deposition testimony to demonstrate the existence of probable cause.  *Id.*

7        Plaintiff rejects Defendants' assertion that the evidence is insufficient to support an

8   inference of racial animus.  *Id.* at 8-9.  She argues that although there is no direct evidence of

9   racial animus, there is sufficient evidence to give rise to an inference of discriminatory intent.  *Id.*

10  In particular, Plaintiff cites the fact that the car was towed even though the policy of the City of

11  Berkeley Police gave Officer some discretion as to whether the vehicle would be towed.  *Id.*

12  Plaintiff also points to Officer Lucero's admission that she saw the Oscar Grant bumper sticker.

13  *Id.*  In addition, Plaintiff cites evidence that she was not driving unlawfully before she was pulled

14  over and that the warrant that Officer Lucero pulled her over for was for a man and therefore did

15  not justify the stop.  *Id.*

16       Plaintiff concedes that her Ralph Act claim stands or falls on the question of whether there

17  is evidence of discriminatory animus but argues that her Bane Act claim does not require a "link to

18  a protected category or characteristic."  *Id.* at 9-10.  Rather, the Bane Act claim requires only "an

19  attempted or completed act of interference with a legal right."  *Id.* at 10. According to Plaintiff, the

20  evidence that supports her claims that her Fourth Amendment rights were violated, and the

21  deliberate indifference of the City of Berkeley Police to the rights of individuals during traffic

22  stops (also the basis of Plaintiff's *Monell* claim), support her Bane Act claim.  *Id.* at 10-11.

23  Plaintiff also asserts that the seizure of her person and her car amounted to violations of her

24  substantive and procedural due process rights under the Fifth and Fourteenth Amendments and

25  _____

26  [7] In connection with her negligent hiring and retention claim, Plaintiff has filed a Request for
    Judicial Notice in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment
27  ("RJN") ask the Court to take judicial notice of CACI jury instruction No. 426 ("Negligent Hiring,
    Supervision, or Retention of Employee").  Plaintiff asserts that the jury instruction is an
    "adjudicative fact" subject to judicial notice under Fed. R. Evid. 201(b).  Defendants do not object
28  to Plaintiff's request, which is GRANTED.

United States District Court
Northern District of California

that these violations also support a Bane Act claim. *Id.* at 10.

Plaintiff argues that Officer Lucero is not entitled to qualified immunity. *Id.* at 11-12. She argues that it is well-established that probable cause is required for a vehicle stop and therefore to the extent there is evidence Officer Lucero stopped Ms. Hutton without probable cause, she is not entitled to qualified immunity. *Id.* at 12. Plaintiff also points out that her license was suspended only conditionally and permitted Plaintiff to drive in the course of employment, as Officer Lucero knew from the DMV report she obtained from her MDT. *Id.* Plaintiff notes that her father, who was also her employer, was at the scene and could have verified her employment. *Id.* at 12. Plaintiff also points to Mr. Hutton's testimony that Officer Lucero told him she was towing the vehicle because Plaintiff "would not shut up," suggesting "that either bias infected the decision or that the decision was based more in heated emotion than the law." *Id.*

Finally, Plaintiff asserts that a claim for negligence may be established based on the violation of a statute that proximately causes an injury and that here, there is a viable claim for negligence for the same reasons her claims under the Ralph Act and the Bane Act are viable. *Id.* at 13.[8]

### E.    Reply

In their Reply brief, Defendants reiterate the arguments in their Motion. As to the fact that Plaintiff's license suspension allowed her to drive in the course of employment, pursuant to Cal. Vehicle Code Section 16073, Defendants assert that the undisputed facts show the exception doesn't apply. Reply at 3-5. In particular, Defendants argue that there is no evidence Ms. Hutton was driving a car that was not registered in her name; to the contrary, the CAD Report indicates that DMV records listed the car as being registered in Ms. Hutton's name. *Id.* (citing Lucero Decl., Ex. 1 at 11). Defendants further assert that Officer Lucero had no duty to investigate whether Plaintiff was driving in the course of employment because "once probable cause is established, an officer has no further duty to investigate." *Id.* at 5 (citing *Cameron v. Craig*, 713 F.3d 1012 (9th Cir. 2013)).

---

[8] At oral argument, Plaintiff stipulated that her negligence claim in Claim Seven is limited to negligence per se based on Defendants' alleged violation of the Ralph Act and the Bane Act.

United States District Court
Northern District of California

1    Defendants object to Plaintiff's reliance on a DMV record that post-dates the incident to

2    show that the status of her license was "nebulous." *Id*. (citing Opposition at 4 and Panto Decl.,

3    Ex. J).  Defendants argue that this document is not relevant because the focus of the probable

4    cause inquiry is "evaluated through the eyes of the officer on the scene at the time of the incident."

5    *Id*. (citing *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir. 1985)).

6    Defendants also reiterate their assertion that Officer Lucero acted lawfully when she

7    decided to tow Plaintiff's vehicle, arguing that Plaintiff does not dispute that Cal. Vehicle Code §

8    14602.6 authorizes a 30-day impound of a vehicle where the driver drives on a suspended license.

9    *Id*.  Further, Defendants assert, Plaintiff does not dispute that the car was not in a legal parking

10   space when Ms. Hutton pulled over; thus, Officer Lucero's decision to tow the vehicle comported

11   with "community caretaking concerns." *Id*. at 6.  Defendants reject Plaintiff's assertion that the

12   officers at the scene were not adequately trained as to the City's towing policy, pointing to Officer

13   Lucero's testimony describing the policy.  Defendants argue that Plaintiff offered no evidence as

14   to the understanding of the other officers at the scene as to the City's towing policy but that even if

15   she had, any evidence as to their training would be irrelevant because it is undisputed that the

16   decision to tow Plaintiff's car was made solely by Officer Lucero.  *Id*.

17   As to Plaintiff's assertion that her father could have driven the car for Ms. Hutton,

18   Defendants assert Plaintiff offered no evidence that Mr. Hutton told Officer Lucero, or any other

19   officer at the scene, that he was licensed and insured and could drive the car.  *Id*.  Rather, the only

20   evidence in the record on this question is Officer Lucero's statement that "[n]o one at the scene,

21   including Mr. Hutton, told [her] they were able to drive the car for Ms. Hutton." *Id*. at 7 (citing

22   Lucero Decl., ¶ 11).

23   Defendants also reject Plaintiff's reliance on the testimony of Mr. Hutton that Officer

24   Lucero told him she towed the car because Ms. Hutton "wouldn't shut up." *Id*.  According to

25   Defendants, Officer Lucero's motives are not relevant given that she had probable cause to cite

26   Ms. Hutton for driving on a suspended license and to tow the vehicle. *Id*. (citing *Devenpeck v.*

27   *Alford*, 543 U.S. 146, 153-155 (2004)). Defendants further assert that there is no evidence that

28   Officer Lucero acted with retaliatory intent because there is no evidence in the record that the

United States District Court
Northern District of California

16

1    officer to whom he spoke was Officer Lucero.  *Id*. at 7-8.

2          Defendants reiterate their arguments that Ms. Hutton consented to a search of her vehicle,

3    and that she has produced no evidence of racial animus and no evidence to support her *Monell*

4    claim or her Bane Act claim.  *Id*. at 8-10.  They also repeat their argument that Plaintiff's

5    substantive due process claim is not cognizable.  *Id*. at 10.

6    **III.    ANALYSIS**

7          **A.    Legal Standard on Summary Judgment**

8          Summary judgment on a claim or defense is appropriate "if the movant shows that there is

9    no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

10   law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

11   the absence of a genuine issue of material fact with respect to an essential element of the non-

12   moving party's claim, or to a defense on which the non-moving party will bear the burden of

13   persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has

14   made this showing, the burden then shifts to the party opposing summary judgment to designate

15   "specific facts showing there is a genuine issue for trial."  *Id*.  On summary judgment, the court

16   draws all reasonable factual inferences in favor of the non-movant.  *Scott v. Harris*, 550 U.S. 372,

17   378 (2007).

18         **B.    Claim One (42 U.S.C. § 1981)**

19         Defendants assert they are entitled to summary judgment on Plaintiff's claim under 42

20   U.S.C. § 1981 because there is no evidence other than Plaintiff's own subjective beliefs that

21   Defendants' conduct was motivated by racial animus.   The Court concludes that there is not

22   sufficient evidence on this issue to create a fact question and therefore, that Defendants are entitled

23   to summary judgment on this claim.

24         Section 1981 provides, in relevant part, as follows:

25                All persons within the jurisdiction of the United States shall have the
                  same right in every State and Territory to make and enforce
26                contracts, to sue, be parties, give evidence, and to the full and equal
                  benefit of all laws and proceedings for the security of persons and
27                property as is enjoyed by white citizens, and shall be subject to like
                  punishment, pains, penalties, taxes, licenses, and exactions of every
28                kind, and to no other.

United States District Court
Northern District of California

1   42 U.S.C. § 1981(a).   A claim under § 1981 may be based on "nongovernmental discrimination"

2   or "impairment under color of State law."   To prevail on a § 1981 claim, a plaintiff must

3   demonstrate "intentional discrimination on account of race."   *Evans v. McKay*, 869 F.2d 1341,

4   1344 (9th Cir. 1989).   A plaintiff may show discrimination through direct evidence of racial

5   animus or by presenting circumstantial evidence.   *Metoyer v. Chassman*, 504 F.3d 919, 937  (9th

6   Cir. 2007).   Where there is direct evidence of discriminatory motive, such as statements that were

7   overtly bigoted, summary judgment on the question of racial bias generally is inappropriate.   *Id.*

8   On the other hand, to survive summary judgment based on circumstantial evidence of racial bias,

9   that evidence must be "specific and substantial."   *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d

10  1138, 1152 (9th Cir. 2006).  A plaintiff's subjective belief that a defendant's conduct is motivated

11  by discriminatory intent is not sufficient to defeat summary judgment.   *Foster v. Berkeley Police*

12  *Department*, 2011 WL 5861266, at *8 (N.D.Cal., Nov. 22, 2011) (citing *Gomez v. City of*

13  *Fremont*, 730 F.Supp.2d 1056, 1069 (N.D.Cal.2010); *Rodriguez v. Int'l Business Machines*, 960

14  F.Supp. 227, 231 (N.D.Cal.1997); *McKenzie v. City of Milpitas*, 738 F.Supp. 1293, 1301- 02

15  (N.D.Cal. 1990); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005)).

16          Here, Plaintiff has not pointed to any direct evidence that Defendants' conduct was

17  motivated by racial bias.  Rather, it is undisputed that no officer at the scene of the stop, including

18  Officer Lucero, made any statements reflecting discriminatory animus.  Rather, Plaintiff relies on

19  her subjective belief that Officer Lucero began to follow her, then stopped her and towed her

20  vehicle, because Ms. Hutton is African-American.  Plaintiff's primary evidence in support of this

21  belief is that Officer Lucero pulled her over after following her, and that Officer Lucero used a

22  certain tone of voice and had a facial expression that was threatening.   This subjective evidence is

23  insufficient to establish discriminatory motive under § 1981.

24          The only evidence that might arguably support an inference of discriminatory animus is: 1)

25  the testimony of Officer Lucero that Ms. Hutton, at some point during the stop, pointed out an

26  Oscar Grant bumper sticker on her car and engaged in a "yelling rant" accusing Officer Lucero of

27  pulling her over because of the bumper sticker, s*ee* Panto Decl., Ex. C (Lucero Dep.) at 141; and

28  2) Mr. Hutton's testimony that a female officer who apparently was overseeing the towing of Ms.

United States District Court
Northern District of California

18

1   Hutton's car told him that the car was being towed because Ms. Hutton "wouldn't shut up." *See*

2   Panto Decl., Ex. 3 (Jay Hutton Dep.) at 33.  Considered together, and drawing all reasonable

3   inferences in favor of Plaintiff, this evidence could support an inference that Officer Lucero

4   decided to tow Ms. Hutton's vehicle *because* of her "yelling rant" about the Oscar Grant bumper

5   sticker.  Even this evidence is not sufficient to survive summary judgment, however.  To find

6   racial animus based on this evidence, a jury would have to make two inferences.  First, the jury

7   would have to infer that Officer Lucero was, in fact, motivated to tow Plaintiff's car by the content

8   of Plaintiff's statement.  Second, the jury would have to infer from that content that the officer was

9   towing the car not just because of Plaintiff's protestation regarding her bumper sticker, but

10  because of her race. The latter inference is pure speculation. Therefore, the Court concludes that

11  the evidence is insufficient to establish a fact question as to racial animus.

12         Accordingly, Defendants are entitled to summary judgment on Claim One.

13     **C.   Claim Two (42 U.S.C. § 1983 and Fourth Amendment - Wrongful stop and
           seizure)**

14

15         Defendants seek summary judgment on Claim Two on the grounds that: 1) the undisputed

16  facts show that the vehicle stop, citation, and towing of Plaintiff's vehicle did not violate the

17  Fourth Amendment;[9] and 2) Defendants are immune from liability under the doctrine of qualified

18  immunity because Officer Lucero reasonably believed her actions were lawful.  The Court

19  concludes that there are material issues of fact as to Claim Two that cannot be decided on

20  summary judgment.

21         Section 1983 creates a cause of action against a "person who, under color of any [state

22  law], subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges,

23  or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  "Section 1983 does not

24  create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by

25  governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  A plaintiff

26  _____

27  [9] Defendants also argue that to the extent the inventory was a "search," Plaintiff consented to the inventory.  At oral argument, however, Plaintiff stipulated that the inventory was not a search for the purposes of the Fourth Amendment and that Plaintiff's Fourth Amendment claim is not based on the inventory.

28

*United States District Court*
*Northern District of California*

1   bringing a claim under § 1983 must show that "(1) the action occurred 'under color of state law'

2   and (2) the action resulted in the deprivation of a constitutional right or federal statutory right."

3   *Id.* (citation omitted).  "In order for a person acting under color of state law to be liable under

4   section 1983 there must be a showing of personal participation in the alleged rights deprivation:

5   there is no respondeat superior liability under section 1983."  *Id.*  Even where a plaintiff can

6   establish that a constitutional violation occurred, however, the doctrine of qualified immunity may

7   give rise to immunity on the part of a defendant.   Qualified immunity "protects government

8   officials 'from liability for civil damages insofar as their conduct does not violate clearly

9   established statutory or constitutional rights of which a reasonable person would have known.'"

10  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

11  (1982)).

12      Claim Two is based on the alleged violation of the Fourth Amendment of the United States

13  Constitution, which protects against unreasonable searches and seizures.  "A person is seized by

14  the police and thus entitled to challenge the government's action under the Fourth Amendment

15  when [an] officer, by means of physical force or show of authority, terminates or restrains his

16  freedom of movement, through means intentionally applied."  *Brendlin v. California*, 551 U.S.

17  249, 254 (2007) (emphasis, citations, and internal quotation marks omitted).  Thus, "[f]or the

18  duration of a traffic stop . . . a police officer effectively seizes 'everyone in the vehicle,' the driver

19  and all passengers."  *Johnson*, 555 U.S. at 327 (quoting *Brendlin*, 551 U.S. at 255)).  Traffic stops

20  are permissible, however, if an officer "has 'a particularized and objective basis for suspecting the

21  particular person stopped of criminal activity.'"  *Navarette v. California*, 134 S.Ct. 1683, 1687

22  (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-418  (1981); and citing *Terry v. Ohio*,

23  392 U.S. 1, 21-22 (1968)).   The reasonable suspicion standard under *Terry* requires more than a

24  mere "hunch" but "'considerably less than proof of wrongdoing by a preponderance of the

25  evidence,' and 'obviously less' than is necessary for probable cause."  *Id.* (quoting *United States

26  v. Sokolow*, 490 U.S. 1, 7 (1989)).[10]

27

28  [10] Plaintiff concedes in her brief that "an officer may stop and detain a suspect for questioning for
    a limited investigation even if circumstances fall short of probable cause."  Opposition at 6.

United States District Court
Northern District of California

1    "A traffic stop is reasonable at its inception if the detaining officer, at the very least,

2    reasonably suspects the driver has violated the law." *Robinson v. City of San Diego*, 954 F. Supp.

3    1010, 1019 (S.D. Cal. 2013).  However, "[o]nce the purpose of the stop is satisfied and any

4    underlying reasonable suspicion dispelled, the driver's detention generally must end without

5    undue delay unless the officer has an objectively reasonable suspicion that illegal activity

6    unrelated to the stop has occurred or the driver otherwise consents to the encounter."  *Id.*

7         In *Robinson*, the defendant officers had pulled the plaintiffs over after running their license

8    plate number and obtaining information indicating the car was stolen.  *Id.* at 1016.  Prior to

9    making contact with the occupants of the vehicle, however, the officers ran the license plate again,

10   discovered that they had misread or mistyped the license plate number the first time, and that the

11   license plate matched the car make and model of the plaintiff's vehicle, indicating  that the vehicle

12   was not stolen.  *Id.* at 1019.  Even though the officers admitted that they knew a mistake had been

13   made at that point, they proceeded to ask for the license, proof of insurance and registration from

14   the driver; when the driver could not provide proof of insurance he was cited.  *Id.* at 1017.  The

15   passenger, in the meantime, refused to provide any identification, was ultimately dragged from the

16   car by the officers and was arrested.  *Id.* at 1017-1018.  The court concluded, on summary

17   judgment, that defendants violated the plaintiffs' Fourth Amendment rights because, although the

18   initial stop was lawful, once the officers discovered the mistake as to the license plate number,

19   reasonable suspicion for the stop dissipated, rendering the further detention (including the request

20   for the plaintiffs' identification) unconstitutional.  *Id.* at 1019.

21   _____

22   Nonetheless, she goes on to cite *Whren v. United States*, 517 U.S. 806, 809-810 (1996) for the
     proposition that a vehicle stop requires not just a reasonable suspicion but probable cause.  *Id.* at 7.
23   In *Whren*, the Supreme Court held that a traffic stop did not violation the plaintiff's Fourth
     Amendment rights because the officer had probable cause to believe several vehicle code
24   violations had been committed. 517 U.S. at 810.  The Court stated  that "[a]s a general matter, the
     decision to stop an automobile is reasonable where the police have probable cause to believe that a
25   traffic violation has occurred."  *Id.*  Subsequently, the Ninth Circuit addressed whether this
     statement reflected a change in the well-settled rule that only reasonable suspicion is required
26   under the Fourth Amendment to make a vehicle stop.  *U.S. v. Lopez-Soto*, 205 F.3d 1101, 1104
     (2000).  The court found that it did not, noting, "[g]iven that probable cause was clearly satisfied
27   on the facts before the Court in *Whren* and that the Court directed its focus elsewhere, we do not
     believe that the casual use of the phrase 'probable cause' was intended to set a new standard."
28   Thus, Plaintiff's assertion that the Supreme Court adopted a new standard in *Whren* has been
     unequivocally rejected by the Ninth Circuit.

1       The Tenth Circuit reached a similar result in *United States v. McSwain*, 29 F.3d 558

2   (1994), also cited in *Robinson*.  In *McSwain*, the officer pulled the plaintiff over because he could

3   not read the expiration date on the registration sticker on the back of the car.  29 F.3d at 560.  The

4   expiration date appeared to be covered in reflective tape, but once the officer stopped the vehicle

5   and approached on foot, he saw that the reflective tape was a "new device used by the State of

6   Colorado to prevent alteration of the sticker's expiration date" and that the registration was valid

7   and not expired.  *Id*.  Nonetheless, the officer proceeded to question the vehicle occupants and to

8   search the vehicle, ultimately arresting the occupants after finding a gun and what appeared to be

9   crack cocaine in a duffel in the trunk of the vehicle.  *Id*.  The court found that the arrest violated

10  the Fourth Amendment because "[o]nce [the officer approached the vehicle on foot and observed

11  that the temporary sticker was valid and not expired, the purpose of the stop was satisfied."  *Id*. at

12  561.  Thus, the officer's further detention of the vehicle to question its occupants and request the

13  driver's license and registration exceeded the scope of the stop's underlying justification.  *Id*.

14      The Court finds that *Robinson* and *McSwain* are on point with the facts here.  It is

15  undisputed that the warrant for Plaintiff's vehicle was for a man, and that Officer Lucero –

16  according to her own declaration – realized the driver of the vehicle was a woman *before* she

17  spoke to Ms. Hutton.  *See* Lucero Decl., ¶ 8.  Thus, while she may have had reasonable suspicion

18  prior to discovering that the driver was a woman, the underlying justification of the stop ended (to

19  the extent it was based on the warrant on the vehicle) when Officer Lucero realized the driver was

20  a woman, at which point reasonable suspicion based on the warrant dissipated.  The only

21  remaining justifications for the stop was Ms. Hutton's alleged tailgating of Officer Lucero and

22  Officer Lucero's belief that Ms. Hutton was trying to evade her when she drove two and a half

23  blocks before stopping.  As to both of these possible grounds for finding reasonable suspicion

24  there are disputed questions of fact.[11]  Thus, a jury must determine whether Officer Lucero

25  violated the Fourth Amendment when, after realizing that the warrant on the vehicle was not for

26

27  _____

28  [11] Defendants acknowledge there are disputed issues of fact as to the tailgating.  As to the alleged evasive action, the Court finds that there is a fact dispute as to whether Officer Lucero could reasonably have believed that Ms. Hutton was trying to evade arrest.

United States District Court
Northern District of California

1    Ms. Hutton, she proceeded to ask Ms. Hutton to provide her driver's license, registration and proof

2    of insurance.

3         With respect to the question of qualified immunity, the Court further finds that it is well-

4    established that an investigative stop must be "justified at its inception, and . . . reasonably related

5    in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392

6    U.S. 1, 19-120 (1968).  Officer Lucero reasonably should have known this requirement.  Indeed,

7    the Berkeley Police Department Training and Information Bulletin cited by Plaintiff expressly

8    states that "[a]n officer cannot initiate a traffic stop solely to determine whether the driver is

9    licensed."  Panto Decl., Ex. I.  Therefore, Defendants are not entitled to qualified immunity on the

10   basis that Officer Lucero reasonably (if mistakenly) believed that it was lawful to continue with

11   the detention after she had discovered that the warrant on the vehicle was not for Ms. Hutton.

12        Although the Court concludes that Defendants are not entitled to summary judgment as to

13   Claim Two based on the warrant, it is possible that a jury will find that Officer Lucero had

14   reasonable suspicion to stop Ms. Hutton because she was following too closely or evading a

15   police.  Therefore, the Court addresses Plaintiff's remaining claim that even if there was

16   reasonable suspicion to justify the stop and request for Plaintiff's driver's license, Officer Lucero

17   should not have towed the car.  The Court finds that this claim fails, as a matter of law, because

18   the undisputed evidence establishes that: 1) Officer Lucero reasonably believed that Ms. Hutton

19   was driving on a suspended license; and 2) Ms. Hutton was not driving in the course of

20   employment.

21        Officer Lucero cited Ms. Hutton under Cal. Vehicle Code Section 14601.1 but the towing

22   and impoundment of the vehicle was conducted pursuant to Section 14602.6, which is also the

23   provision that allows towing and impoundment under the City of Berkeley Police Department

24   written policy.  Section 14601.1 provides, in part, as follows:

25              No person shall drive a motor vehicle when his or her driving
                privilege is suspended or revoked for any reason other than those
26              listed in Section 14601, 14601.2, or 14601.5, if the person so driving
                has knowledge of the suspension or revocation. Knowledge shall be
27              conclusively presumed if mailed notice has been given by the
                department to the person pursuant to Section 13106. The
28              presumption established by this subdivision is a presumption

United States District Court
Northern District of California

23

affecting the burden of proof.

Cal. Vehicle Code § 14601.1.  Section 14602.6, states, in part, as follows:

> Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted pursuant to Section 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person in accordance with Chapter 10 (commencing with Section 22650) of Division 11. A vehicle so impounded shall be impounded for 30 days.

Cal. Vehicle Code § 14602.6.  Based on the first phrase of Section 14602.6, Officer Lucero was authorized to tow and impound Ms. Hutton's car (along with issuing a citation for driving on a suspended license) because the undisputed evidence shows that she reasonably believed Ms. Hutton was driving on a suspended license. Ms. Hutton's testimony alluding to "conflicting paperwork" regarding to the status of her license is not sufficient to demonstrate a material dispute of fact as to whether Officer Lucero believed her license was valid at the time of the stop because it has no bearing on the information that was available to Officer Lucero at the time.  In any event, the testimony is too vague to support a reasonable inference that Ms. Hutton's license was valid at the time of the stop and none of this allegedly "conflicting paperwork" was provided to the Court.

Finally, to the extent the policy of the Berkeley Police Department regarding towing may give officers discretion as to whether a vehicle should be towed, Plaintiff has offered no authority that suggests that an officer's exercise of discretion gives rise to a Fourth Amendment violation. Therefore, Plaintiff's Fourth Amendment claim fails, as a matter of law, to the extent it is based on that theory.

### D.   Claim Three (42 U.S.C. § 1983 and Fourth Amendment - pattern and practice of deliberate indifference to constitutional rights by City of Berkeley Police Department under *Monell*)

Plaintiff asserts a claim under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978) (Claim Three) based on the allegation that the City of Berkeley Police Department "approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly

authorized the continuing pattern and practice of misconduct and/or civil rights violations by officers."   Because Plaintiff has offered no evidence in support of this claim, Defendants are entitled to summary judgment on it.

Although municipalities are not subject to vicarious liability under § 1983 solely on account of the actions of their employees, § 1983 "imposes liability on a government that, under the color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).   One way to establish a claim under *Monell* is to prove that an officer "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."  *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) (citations and quotations omitted).  Where, as here, a *Monell* claim is based on an alleged policy of constitutional violations based on deliberate indifference to the training and supervision of officers, a plaintiff must show that the city's decision-makers acted with deliberate indifference by "continu[ing] adherence to an approach that they know or should know has failed to prevent tortious conduct by employees" in "conscious disregard for the consequences of their action."  *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).  One way to demonstrate such a conscious disregard is to show that there is a pattern of constitutional violations on the part of officers that should have made it "plainly obvious" to the City that they were receiving inadequate training.  *Id*. at 407-408.

In this case, Plaintiff has not offered any evidence showing a pattern of constitutional violations.  Rather, the only evidence in the record relates to the alleged unconstitutional acts in this case.  Such evidence does not suffice to establish *Monell* liability.  Therefore, Defendants are entitled to summary judgment on Claim Three.

### E.    Claim Four (42 U.S.C. § 1983 and Fifth and Fourteenth Amendments - Due Process)

Plaintiff asserts a claim under 42 U.S.C. § 1983 based on alleged violation of her right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.  In particular, she alleges that Defendants "did not have a right or reason to *Terry* stop Plaintiff, to

United States District Court
Northern District of California

search Plaintiff, to seize or detain Plaintiff, or to seize Plaintiff's car, nor to prevent her from calling her father to her presence during the encounter with Defendant, nor to prevent her from recording officers' names and badge numbers amongst other things." *Id.* Plaintiff also asserts that her First Amendment right to "observe and record police activities in public was infringed." *Id.*

To the extent this claim is based on the alleged unlawful stop, plaintiff's detention during the stop, and the towing of Plaintiff's car, this conduct is actionable under the Fourth Amendment rather than the Fourteenth Amendment due process clause, or the Fifth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Further, Plaintiff has offered no authority to support her assertion that the officers' refusal to allow her father to approach violated her constitutional rights. Nor has she pointed to any evidence or authority suggesting that there is a fact question as to the First Amendment violation based on alleged refusal to allow Plaintiff to monitor police activity.

## F.    Claim Five (Bane Act)

Defendants challenge Plaintiff's Bane Act claim on the basis that under *Shoyoye* and *Gant*, Plaintiff has not demonstrated that Defendants engaged in any "threat, intimidation, or coercion." Defendants further assert that to the extent that the Bane Act claim is based on a theory of false arrest/false imprisonment, Officer Lucero is immune from liability under Cal. Penal Code Section 847(b). The Court disagrees.

### 1.    Whether coercion inherent in wrongful detention is sufficient to establish a violation of the Bane Act

California Civil Code § 52.1 allows an individual to bring a civil action for damages where "a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."   To prevail on a Bane Act claim, a plaintiff must demonstrate: 1) an act of interference with a legal right by 2) intimidation, threats or coercion.   *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998).   Here, the Court has found, as a matter of law, that reasonable suspicion based on the warrant dissipated when Officer Lucero saw that the driver was a female, leaving a fact question as to whether

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Officer Lucero had reasonable suspicion based on Plaintiff's alleged tailgating or evasion.  To the

2   extent that a jury could conclude that the stop violated the Fourth Amendment, the Court must

3   decide whether a wrongful detention in violation of the Fourth Amendment, without more, is

4   sufficient to satisfy the "intimidation, threats, or coercion" requirement.

5          "Courts in California are split on whether a Fourth Amendment excessive force or false

6   arrest violation alone qualifies for the element of interference with a legal right under § 52.1."

7   *Haynes v. City and County of San Francisco*, 2010 WL 2991732, at *6 (N.D. Cal., July 28, 2010)

8   (citing *Justin v. City and County of San Francisco*, 2008 WL 1990819, at *9 (N.D. Cal., May 5,

9   2008); *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F.Supp.2d 1084, 1102

10  (N.D.Cal.2005)).  The undersigned has concluded that in cases involving Fourth Amendment

11  violations that include allegations of excessive force, the excessive force is enough to meet the

12  "intimidation, threats, or coercion requirement."  *Russell v. City and County of San Francisco*,

13  2013 WL 2447865, at *16-18 (N.D. Cal., June 05, 2013).  Now the Court must address whether a

14  Fourth Amendment violation that indisputably does *not* involve excessive force can satisfy this

15  requirement as well.

16         In reaching the conclusion that the use of excessive force in violation of the Fourth

17  Amendment is sufficient to support a violation of the Bane Act, this Court relied on the reasoning

18  in *Warner v. County of San Francisco*, 2011 WL 662993 (S.D. Cal. Feb. 14, 2011), which in turn

19  relied, in part on the California Supreme Court's decision in *Venegas v. County of Los Angeles*, 32

20  Cal. 4th 820 (2004).  As the California Court of Appeal's decision in *Shoyoye* must be viewed in

21  the context of the existing California Supreme Court precedent, the Court begins its analysis by

22  reviewing *Venegas*.

23         In *Venegas*, the plaintiff asserted claims under § 1983 based on alleged violation of his

24  Fourth Amendment rights, as well as under the Bane Act, asserting that he had been wrongfully

25  arrested and detained and that a search of his house was also invalid.  32 Cal. 4th at 826.  There

26  was no claim that defendants used excessive force.  The trial court entered judgment in favor of

27  the defendants following a trial and sustained a demurrer as to the Bane Act claim, finding that

28  that claim failed because the plaintiff had not alleged membership in a protected class or that

27

defendants acted with racial animus. *Id*. at 828. The California Supreme Court found that the trial court had applied the wrong standard, finding based on a review of the legislative history that while the Bane Act was intended to cover "hate crimes," it was not limited to such claims. *Id*. at 842-843. The court explained:

> In *Jones v. Kmart Corp*. (1998) 17 Cal.4th 329, 338, 70 Cal.Rptr.2d 844, 949 P.2d 941, we acknowledged that Civil Code section 52.1 was adopted "to stem a tide of hate crimes." But contrary to County's position, our statement did not suggest that section 52.1 was limited to such crimes, or required plaintiffs to demonstrate that County or its officers had a discriminatory purpose in harassing them, that is, that they committed an actual hate crime. We continued in *Jones* by simply observing that the language of section 52.1 provides remedies for "certain misconduct that interferes with" federal or state laws, if accompanied by threats, intimidation, or coercion, and whether or not state action is involved. (*Jones*, *supra*, at p. 338, 70 Cal.Rptr.2d 844, 949 P.2d 941.) Plaintiffs have alleged such misconduct here.

*Id*. at 843.

The court in *Venegas* went on to reject the defendants' prediction that the court's holding would "result in 'an incalculable increase in the filing of lawsuits in our State's courts,' imposing heavy burdens on 'the already financially-strapped court system. . . .'" because section 52.1 would apply to "all tort actions." *Id*. The court reasoned as follows:

> First, Civil Code section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right. Second, imposing added limitations on the scope of section 52.1 would appear to be more a legislative concern than a judicial one, and perhaps the Legislature would be advised to reexamine the matter. But we need not decide here whether section 52.1 affords protections to every tort claimant, for plaintiffs in this case have alleged unconstitutional search and seizure violations extending far beyond ordinary tort claims. All we decide here is that, in pursuing relief for those constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion. The Court of Appeal was correct in holding that plaintiffs adequately stated a cause of action under section 52.1.

*Id*.

In *Shoyoye*, the court relied upon the above-cited distinction between "ordinary tort claims" and "unconstitutional search and seizure violations extending far beyond tort claims" to

28

conclude that a plaintiff who alleged that he had been over-detained by "about 16 days as a result of unintentional clerical error" could not assert a Bane Act claim. 203 Cal. App. 4th 947, 950 (2012). As in *Venegas*, the only coercion was that inherent in the detention itself; there was no claim of excessive force. *Id*. at 850-851. Based on the legislative history, the court in *Shoyoye* concluded that the Bane Act was meant to "address interference with constitutional rights involving more egregious conduct than mere negligence" and therefore, that "the apparent purpose of the statute is not to provide relief for an over-detention brought about by human error rather than intentional conduct." *Id*. at 848. The court went on to state:

> The legislative history thus supports our conclusion that the statute was intended to address only egregious interferences with constitutional rights, not just any tort. The act of interference with a constitutional right must itself be deliberate or spiteful. . . . Thus, we conclude that where coercion is inherent in the constitutional violation alleged, i.e., an over-detention in County jail, the statutory requirement of "threats, intimidation, or coercion" is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself.

*Id*. at 849. The court noted that a federal district court had reached the same conclusion in *Gant v. County of Los Angeles*, 765 F. Supp. 2d 1238 (C.D. Cal. 2011). There, the plaintiff had been arrested and detained on the basis of a warrant for his non-identical twin brother, even though the plaintiff had showed the officer "judicial clearance papers" indicating that the warrant for his brother did not apply to him. 765 F. Supp. at 1246. The court in *Gant* held broadly that "a wrongful arrest and detention, without more, cannot constitute 'force, intimidation, or coercion' for purposes of section 52.1." *Id*. at 1253-1254. The *Gant* court did not, however, attempt to reconcile its holding with the discussion in *Venegas* cited above.

In *Shoyoye*, the court distinguished *Venegas* as follows:

> The evidence presented at trial showed only that County employees were negligent in assigning to Shoyoye a parole hold in the computer system, and in failing to detect the error during the subsequent quality control procedure. None of the County employees here wrongfully detained Shoyoye with actual or presumed knowledge that he should have been released. Early on, someone followed through on his inquiry and ascertained that he had a DCL hold. The employees could reasonably rely on the information in the computer system, based on the reasonable assumption that the quality control check would catch errors. As a result, the County employees thought he should be there. Any

29

1
2
3
4
5
6

intimidation or coercion that occurred was simply that which is reasonable and incident to maintaining a jail. The coercion was not carried out in order to effect a knowing interference with Shoyoye's constitutional rights. This is in stark contrast to *Venegas II*, for example, *in which the evidence presented could support a finding that the probable cause that initially existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights*. (*Venegas II*, supra, 32 Cal.4th at p. 843, 11 Cal.Rptr.3d 692, 87 P.3d 1 ["plaintiffs in this case have alleged unconstitutional search and seizure violations extending far beyond ordinary tort claims"].)

7   203 Cal. App. 4th at 961 (emphasis added).

8        This Court finds the highlighted language in the passage quoted above, in *Shoyoye*, to be

9   particularly significant, as it acknowledges that under *Venegas*, the *mere fact* of continuing to

10  detain an individual after probable cause has dissipated may support the conclusion that an

11  officer's conduct constitutes a "knowing and blameworthy interference."  Further, to the extent

12  that the California Supreme Court in *Venegas* did not point to any evidence or allegation that the

13  wrongful conduct in that case went beyond the fact of detaining the plaintiff without probable

14  cause, the Court concludes that *Shoyoye* must be read narrowly and with great care.  In particular,

15  the *holding* of the case is consistent with *Venegas* because, under the facts of *Shoyoye*, the

16  detention involved only a negligent act, namely, a clerical error.  On the other hand, to the extent

17  that the *Shoyoye* court announced a broader rule purportedly requiring some additional subjective

18  intent on the part of defendants beyond a knowing violation of an individual's Fourth Amendment

19  rights, such a "spiteful" conduct, that requirement cannot be squared with *Venegas*.  Nor does the

20  court find any logical justification for the *Shoyoye* court's jump from the narrow conclusion that

21  because a Fourth Amendment violation based on ordinary negligence cannot support a Bane Act

22  claim, the coercion inherent in a wrongful detention is *never* sufficient to support a Bane Act

23  claim.  In any event, the Court concludes that the *Shoyoye* court's holding is dicta to the extent that

24  it goes beyond the facts of that case, involving a Bane Act claimed that is grounded in negligence

25  rather than an intentional act.[12]

26        For the reasons discussed above, the Court concludes that *Shoyoye* is distinguishable and

27

28  [12] Similarly, the Court finds the reasoning of *Gant* to be unpersuasive to the extent that it does not explain how its holding is consistent with *Venegas*.

United States District Court
Northern District of California

1   does not support Defendants' request for summary judgment.  In this case, as in *Venegas*, Officer

2   Lucero's reasonable suspicion based on the warrant had dissipated by the time she asked Ms.

3   Hutton for her license.  Thus, if the jury concludes that there was no reasonable suspicion based on

4   the alleged tailgating and evasion, it may also find that Officer Lucero engaged in an intentional

5   act sufficient to satisfy the Bane Act when she proceeded to ask Ms. Hutton to produce her

6   license.

7                      **2.   Cal. Penal Code § 847(b)**

8          Cal. Penal Code Section 847(b) provides as follows:

9                 b) There shall be no civil liability on the part of, and no cause of
              action shall arise against, any peace officer or federal criminal
10              investigator or law enforcement officer described in subdivision (a)
              or (d) of Section 830.8, acting within the scope of his or her
11            authority, for false arrest or false imprisonment arising out of any
              arrest under any of the following circumstances:
12                (1) The arrest was lawful, or the peace officer, at the time of the
13              arrest, had reasonable cause to believe the arrest was lawful.
14                (2) The arrest was made pursuant to a charge made, upon reasonable
              cause, of the commission of a felony by the person to be arrested.
15                (3) The arrest was made pursuant to the requirements of Section
              142, 837, 838, or 839.

16   Cal. Penal Code § 847(b).  As discussed above, the detention of Ms. Hutton became unlawful, to

17   the extent it was based on the warrant, once Officer Lucero discovered that the driver of the

18   vehicle she had stopped was a woman.  Further, the Court has found that Officer Lucero is not

19   entitled to qualified immunity on the basis that she reasonably believed she could continue to

20   detain Ms. Hutton based on the warrant even after she realized it was not for Plaintiff.   Therefore,

21   the immunity provided under Section 847(b) also does not apply to Officer Lucero's conduct to

22   the extent she detained Ms. Hutton on the basis of the warrant and Defendants are not entitled to

23   summary judgment under this provision. [13]

24

25              **G.    Claim Six (Ralph Act)**

26          Plaintiff asserts a claim under the Ralph Act, Cal. Civ. Code § 51.7 based on Defendants'

27   ───────────────────
[13]The Court notes, however, that its holding does not preclude Defendants from asserting this
28   defense in connection with the alleged tailgating and evasion that Defendants also contend
     justified the stop.

alleged violation of Plaintiff's right "to be free from violence, or intimidation by threat of violence committed against her and her property because of her race, political affiliation, or other impermissible bias." Plaintiff concedes, however, that "[i]f Plaintiff has failed to submit enough evidence to support an inference of race discrimination to be drawn by the jury, then her 1981 and Ralph Act claim fail." Opposition at 9. As discussed above, the Court finds that Plaintiff has not offered evidence sufficient to support a reasonable inference that Officer Lucero's conduct was motivated by race. Therefore, Defendants are entitled to summary judgment on Plaintiff's Ralph Act claim.

### H.    Claim Seven (Negligence)

Defendants argue that "[t]here are no cases that support a claim for mere negligence against a police officer in the context of a stop, search, citation, or tow. Motion at 20. Although Plaintiff does not offer any such case in her Opposition brief, she asserts that a negligence claim may be asserted on the basis that a violation of the Bane Act or the Ralph Act would constitute negligence per se. Opposition at 13. Defendants do not appear to challenge this assertion in their Reply brief. Therefore, as the Court has found that Plaintiff's Bane Act claim can proceed, it also declines to dismiss her negligence claim on summary judgment.

### I.    Claim Eight (Negligent training, supervision and retention)

Defendants challenge Plaintiff's claim for negligent training, supervision and retention, on the grounds that Plaintiff has offered insufficient evidence to create a fact question on this claim. The Court agrees.

It appears Plaintiff relies on three theories in support of this claim: 1) some officers who were at the scene testified that they did not need probable cause to conduct a vehicle stop; 2) some officers were not familiar with the City of Berkeley Police Department's written policy on when a vehicle may be towed; and 3) officers may not have been trained properly as to towing procedures, as evidenced by the fact that Officer Huynh conducted additional training on this immediately after the incident. *See* Opposition at 7. There is virtually *no* evidence in the record, however, regarding training, supervision or hiring as it relates to these theories. Nor has Plaintiff demonstrated there is a fact question as to causation under any of these theories. Therefore,

32

1   Defendants are entitled to summary judgment on this claim.

2   **IV.      CONCLUSION**

3          For the reasons stated above, the Motion is GRANTED in part and DENIED in part.

4   Claims Two, Five and Seven survive summary judgment.  Plaintiff's remaining claims are

5   dismissed with prejudice.

6          **IT IS SO ORDERED.**

7

8   Dated: September 9, 2014

9

10

11                                          _____

12                                          JOSEPH C. SPERO
                                            United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California